Donald Oscar **LANSDOWN**, Movant-Appellant,

v.

**STATE of Missouri**, Respondent.

No. 55001.

Supreme Court of Missouri, Division No. 2.

March 8, 1971.

Farrington, Curtis & Strong, E. C. Curtis, Lincoln J. Knauer, Springfield, for movant-appellant.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Presiding Judge.

Defendant, Donald Oscar Lansdown, was convicted by a jury in the Circuit Court of Wright County, Missouri, of stealing an automobile. He was represented by Ben J. Martin, counsel of his own choosing. A motion for new trial was filed. Punishment was assessed under the provisions of the Habitual Criminal Act at imprisonment for a term of ten years. No notice of appeal was filed.

On May 6, 1969, a motion to vacate was filed under S.Ct. Rule 27.26, V.A.M.R., counsel was appointed to represent defendant on May 9, 1969, and an evidentiary hearing was held, with defendant present, on June 5, 1969. On July 29, 1969, the trial court entered findings of facts and conclusions of law, and denied the motion to vacate. Defendant appealed.

Defendant first contends that "the finding of the trial court that movant was afforded an opportunity to subpoena witnesses is not supported by the evidence and is clearly erroneous."

In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court of the United States held that an accused's Sixth Amendment right to have compulsory process for obtaining witnesses in his favor was so fundamental that it could be considered incorporated in the due process clause of the Fourteenth Amendment and, therefore, applicable to the states. (See also Art. 1, § 18(a), Const. of Mo.1945, V.A.M.S.)

Defendant testified at the evidentiary hearing, in part, as follows:

"Q   Is there anything else now you think of?

"A   You mean pertaining to the trial?

"Q   Yes.   A   Only one thing, I asked to subpoena witnesses, someone who was in the jail at the time I left which would correspond with the time the car was stolen who knew the last time I was in the jail. These people weren't subpoenaed.   I don't know whose fault it was.   I asked the Sheriff if they had been subpoenaed.

"Q   Did you discuss that with Mr. Martin?   A   I did, sir.

"Q   You know whether any subpoena was ever issued or not?   A   I don't know that, sir.

"Q   But you did request to have them as witnesses and they were not in court?   A That is right.

\*        \*        \*        \*        \*        \*

"Q   Did you give Mr. Martin a list of the witnesses you wanted in your trial? A   I told him who I wanted.   The Sheriff came back and asked who I wanted, I told him.   He has told me on each occasion even about the witnesses he didn't see any need of it."

■   There was no evidence adduced at the hearing to indicate that defendant's employed counsel requested the issuance of subpoenas and was refused.   Cf. State v. Worley, Mo.Sup., 383 S.W.2d 529, 532[3]. The trial court found "that the defendant was not denied the right to subpoena witnesses in his trial, but was afforded an opportunity to subpoena any witnesses he wanted."

Defendant next contends that he was ineffectively represented by counsel because counsel failed to file a notice of appeal, "although requested by movant to do so."

In State v. Frey, Mo.Sup., 441 S.W.2d 11, 14, this Court recognized that an accused may be "unconstitutionally deprived

of his direct appeal * * * because of the failure of counsel to file a timely notice of appeal regardless of his motive in so doing."

■ Defendant attached to his motion to vacate a copy of the following letter from his trial counsel:

"October 22, 1968

"I wish to redirect your attention to my letter to you of June 18, 1968, I want to make it abundantly clear that it is my firm conviction that it is to your benefit to leave matters where they are. As you have been repeatedly previously informed the prosecuting attorney of Wright County has at least three more charges which he can file against you which upon conviction would carry several more years of penitentiary time for you. However, let me remind you again that the prosecuting attorney has made it clear that he would not file these charges if an appeal of your present conviction was not prosecuted. Therefore, I think it is safe for you to assume that if you continue in the prosecution of an appeal of your present conviction that the prosecuting attorney of Wright County is going to file other charges against you.

"(Signed) Ben J. Martin."

Defendant was given full opportunity to testify at the evidentiary hearing, and *at no time* did he testify that he requested that his employed counsel file a notice of appeal. The letter, supra, shows that counsel for defendant advised against an appeal.

The trial court found that "defendant was adequately and fairly represented by competent counsel at the time of his trial and thereafter."

■ Defendant finally contends *pro se* that the trial court erred in denying his pretrial motion for mental examination, "when substantial evidence existed, showing that appellant was a former mental patient, and was still under medication and treatment at the time of the trial."

The record of the trial court, entered prior to trial, reads as follows:

"May 20, 1968. Defendant appears in custody and by his attorney. State by Prosecuting Attorney, parties announce ready on defendant's application for psychiatric examination. Hearing held. Court finds no reasonable ground for defendant's application and denies same."

Defendant's testimony at the evidentiary hearing reads, in part, as follows:

"Q When did you first learn you were charged under this Habitual Criminal or Prior Conviction Act?

"A On the 20th day of May, sir, I believe it was at 9:00 o'clock, it could have been ten I came over here to the court room. My attorney had prepared a motion for insanity hearing, they put me in the same chair, asked me a few questions, asked if I had been in a mental hospital. I said I had been in Colorado for observation. My attorney talked awhile and my motion was denied. The Prosecuting Attorney, Mr. Turner, he had what you call a rap sheet, F.B.I. sheet or something, he read off prior charges that had been on me, convictions that I pled guilty to. I am not sure what else happened, there was a little talking going on there, then we proceeded to select a jury.

*     *     *     *     *     *

"I had been trying all the time to get Mr. Kelley [the sheriff] to get some epileptic medicine from at least a dozen doctors in Colorado and California. I failed to do so until just before my trial. My attorney asked the Honorable Judge here if he would order me some medicine. The judge asked them to get my medicine and I got some.

*     *     *     *     *     *

"Q You are saying you are suffering from epilepsy?

"A That is right, sir.

"Q What experience have you had while in the Wright County Jail with receiving

treatment for that or medicine you feel you needed or that doctors have prescribed?

"A Like I said before on two occasions when I was here before the Sheriff went and got me some medicine. My mother informed him I was an epileptic and so did I. I asked him to get medicine. He said one time he went over to the drug store and got some Mile's Nervine, you know what that is, then I asked for a doctor. He told me I could get anyone I chose to get, he would let them in the jail. I asked him to call Dr. Gentry. He told me Doc Gentry told him he wasn't coming up here. That is the last I heard about any medical attention."

Defendant relies upon Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. The following language from State v. Brizendine, Mo.Sup., 433 S.W.2d 321, 335, is appropriate here:

"Examination of the court's opinion in Pate v. Robinson, supra, shows the significance of the absence, in this case, of substantial support for the claim of incompetency to stand trial. In Pate, there was evidence on a broad scale relating to the defendant's mental capacity. The defendant had had a long history, adduced at the trial, of behavior evidencing mental illness. The Supreme Court held that, in such circumstances, the trial court had the duty to consider and pass upon the competency of the defendant to stand trial, regardless of the absence of request by counsel for either the state or the petitioner."

The trial court, on the evidence adduced, found "that the defendant was not improperly denied a right for a sanity hearing by reason of the absence of any cogent evidence of his lack of mental capacity to participate in his trial; and further finds that defendant was sane and competent to assist in his defense."

In Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 70, this Court said: "At the outset, we observe that the burden of proving ground for relief rests on the prisoner, Supreme Court Rule 27.26(f), and that on appeal our review is limited 'to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous,' Supreme Court Rule 27.26(j). Prior to the amendment of Rule 27.26, effective September 1, 1967, Supreme Court Rule 28.05 provided for de novo appellate review in proceedings under Rule 27.26. However, Supreme Court Rule 28.05 was repealed, effective September 1, 1967, and the review provided by Supreme Court Rule 27.26(j) was substituted. The appellate review thus established corresponds to the appellate review of federal post-convictions under § 2255, Title 28, U.S.C. Clearly, this is not a de novo review. Rather, the findings of the trial court are presumptively correct and are to be sustained unless clearly erroneous. Amer. v. United States, 8 Cir., 367 F.2d 803; Drummond v. United States, 8 Cir., 350 F.2d 983; Burge v. United States, 8 Cir., 332 F.2d 171."

We recognize that we are confronted in this case with allegations which involve *fact questions* as to whether fundamental federal constitutional rights have been violated. On post-conviction review of such allegations, it could perhaps be argued that if a movant asserts, and orally testifies, that his federal constitutional rights have been violated, *the inquiry ends,* unless the prosecution can produce evidence which will satisfy the reviewing court that movant's assertions are without substance. The post-conviction remedy available in Missouri under S.Ct. Rule 27.26 does not embrace such an argument.

The applicable Missouri law is now well-established. A defendant may, after sentence, file a motion to vacate sentence under Rule 27.26, and shall be given an evidentiary hearing if issues of fact are raised in the motion. Rule 27.26(e). In the determination of these *fact issues*, the credibility of witnesses and the weight of the evidence are matters for the trial court, not this Court. Shoemake v. State, Mo. Sup., 462 S.W.2d 772 (decided by this Court en Banc, 1971). Our function is to

determine only whether the findings of the trial court are "clearly erroneous." Rule 27.26(j).

The issues on this appeal are *fact issues*. They were resolved against defendant by the trial court after a full evidentiary hearing. We have reviewed the entire evidence in this case and are *not* "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; Clayton v. United States, 8 Cir., 302 F.2d 30, 35; Crosswhite v. State, supra. Accordingly, we have concluded that the findings of the trial court are not clearly erroneous.

The judgment is affirmed.

All of the Judges concur.