Jerry Dean JONES, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 56068.

Supreme Court of Missouri,
Division No. 1.

Sept. 13, 1971.

Rehearing Denied Oct. 11, 1971.

**224**

Edwin S. Baldwin, Thomas E. Wack, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., John W. Cowden, Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Presiding Judge.

On July 8, 1968, movant (hereinafter referred to as defendant) entered a plea of guilty to a charge of second degree murder and was sentenced to imprisonment for a period of 20 years. See §§ 559.020 and 559.030.[1] Defendant thereafter filed the instant motion to vacate the judgment under S.Ct. Rule 27.26, V.A.M.R. After holding an evidentiary hearing the trial court overruled the motion and defendant has duly appealed.

The grounds alleged in the motion to vacate were that "(1) Petitioner was denied and deprived of a competency hearing prior to the acceptance of a plea of guilty, by the trial court, because evidence of incompetency existed, contrary to due process of the law. (2) Petitioner did not enter a voluntary plea of guilty with the full understanding of the nature of the charge and the consequences of a guilty plea, contrary to due process of the law. (3) Petitioner was not competent to enter into a bargain for a set amount of time, for a guilty plea, because he was addicted to habit-forming drugs prior to arrest, and was mentally affected from withdrawal symptoms at the time of plea arrangement, pleading and sentencing."

It will perhaps be of interest to state briefly the facts relating to the shooting out of which this case arose. On the evening of September 16, 1967, the defendant and a companion entered a tavern located on South Grand Avenue in St. Louis and went to a certain table. Certain words of profanity took place between defendant and other parties sitting at the table. After a time defendant obtained a pistol from his companion and pointed it at a man called "Spider." Spider took hold of defendant's hand and raised the gun and a shot was discharged. At that time Spider started to move away and defendant fired another shot in his direction. Defendant then walked over toward the bar area, turned, and fired a shot which struck one Terry Dillman. Dillman died shortly thereafter. Defendant and his companion left the tavern and were arrested a few hours later by police officers.

On the hearing of the 27.26 motion defendant testified that he did not know Terry Dillman and did not intend to kill him. The clear inference from this testimony is that he intended to shoot Spider but that the bullet struck Dillman. Defendant further testified that prior to his arrest he had been taking various drugs,

1. Statutory references are to RSMo 1969, V.A.M.S.

including amphetamine and marijuana; that on the morning that his plea of guilty was entered he took a "shot" which included amphetamine and cocaine but that he remembered what occurred at the time his plea was entered; that on that morning, in the conference room, he talked with his attorney, and to his wife, mother, and brother about whether he should take the 20 years or go to trial; that he really didn't want to plead guilty but he did so because his attorney said he would get 50 years if he went to trial; that he did not consider that he was guilty of the charge because, although he shot the victim, it was accidental; that he did not understand the elements of second degree murder. He also testified as follows: "Q Now, prior to the time you pled guilty in this case were you aware of the minimum and maximum range of sentence that could be placed on you for second degree murder? A Ten or life. Q Did you know that? A Yes. Q Were you aware— Did Mr. Dobberstein tell you that the minimum was ten, or did you find that out afterwards? A Guys in jail told me. Q Did you know this before you pled guilty, that the range of sentence was from ten to life? A I didn't know for sure, no. * * * Q (by Mr. Baldwin): Did Mr. Dobberstein tell you the various elements that constitute the crime of second degree murder? A No, sir."

Defendant's older brother, William R. Jones, testified that he had seen defendant using drugs several times prior to his arrest. He testified that on the morning of the court proceedings defendant "didn't act like himself; his eyes were real big and the pupils were open wide. He would be real quiet one minute and then flare up real quick"; that in the conference room "my brother was asking us whether or not he should take that twenty years and we were just having a conversation between us and his wife says, 'Go ahead and take it' and he just flared up and turned around and spun and hit the wall"; that a guard who was present told defendant, "You best take that twenty years because you'll get fifty if you don't." He further stated that he and his mother did not want defendant to enter a plea of guilty.

Paul Dobberstein, Jr., an attorney specializing in criminal practice, represented defendant on the original charge. He testified that when he first interviewed defendant he saw nothing unusual about his mental condition; that he talked with defendant's mother and she told him that defendant was struck with a baseball bat in 1962 and she suspected that he might have a mental problem; that he therefore filed a motion to obtain a psychiatric examination; that the circuit attorney's office consented to the motion and the examination was ordered; that after the examination was made at the State Hospital at Fulton he received a copy of a report, dated May 24, 1968. The witness was requested to read portions of the report, which included the following: "Orientation: He is oriented for time, place and person. Memory: His memory is unimpaired for both recent and remote events. Speech and mental activity: He is coherent, alert, relevant and there are no hallucinations or delusions. Mood and effect: There is neither depression nor elation and his mood is appropriate to the situation. Although he showed some mild anxiety it is considered to be no more than that which would be expected in a person in his present situation. Insight and Judgment: Both appear to be intact. Psychological testing: Psychiatric test indicates that he is functioning in dull normal range of intelligence. The test failed to indicate the presence of any psychosis. * * * FINDINGS: One: That the accused has no mental disease or defect within the meaning of § 552.010. Two: That the accused has the capacity to understand the proceedings against him and can assist in his own defense. Three: That the accused did know and appreciate the nature, quality, and wrongfulness of the act with which he is charged."

This witness testified further that he did not remember "for sure" whether he explained to defendant the elements of second degree murder or the range of punishment; that the case was set for trial for July 8, 1968, and he was prepared to try it; that on that morning he conferred with the defendant and several members of his family in the conference room; that defendant appeared very nervous and at times didn't seem to hear what was said; that he left the room for a short time and when he returned defendant told him he would enter a plea of guilty. He stated that he had previously "explained to him what could happen and the consequences of going to trial"; that under the facts of the case he felt it was to the defendant's best interest to enter a plea of guilty and had recommended that he do so.

Defendant also offered as a witness Dr. T. F. Summers who testified that he had been the Jones family physician from about 1957 to 1966; that when defendant was struck by the baseball bat in 1962 he was unconscious for a period of time, during which time he had several spasms and afterwards complained of severe headaches; that he underwent a personality change, complaining of loss of memory, and was inclined to be cross and ill-tempered; that he had him admitted to a hospital for examination but no definite organic pathology was found; that in 1966, when he last saw him, he thought defendant's mental condition was such that he could have understood the nature of the charges that were brought against him.

An examination of the transcript of the proceedings at the time the plea was entered discloses that the court used meticulous care in explaining the procedure and in endeavoring to ascertain that defendant was entering his plea voluntarily and with full knowledge of the consequences. The only possible omission was that the court did not tell defendant the range of punishment for the offense. That, no doubt, was omitted because it clearly appears that the attorneys had a definite agreement that if defendant pleaded guilty he was to receive a twenty-year sentence. Apparently the court had knowledge of the agreement, and it had been discussed by defendant with the members of his family.

At the time of ruling on the motion the trial court entered detailed findings of fact and conclusions of law. We will not extend this opinion by quoting therefrom; we consider it sufficient to say that the court found the facts contrary to defendant's contentions.

It should be mentioned at the outset of our consideration of the contentions on appeal that the burden of proving the grounds for relief is upon defendant and that upon appeal our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." S.Ct.Rule 27.26 (j).

The first point briefed is that the trial court erred in failing to find that defendant had been denied due process of law by the failure of the court to hold a hearing upon his competency to stand trial prior to the entry of his plea of guilty. We rule this contention adversely to defendant because it is our view that the facts here did not require such a hearing. In the first place we do not see that there was ever a bona fide doubt raised concerning defendant's competency to stand trial. His counsel saw nothing which caused him to have a doubt, but filed the unverified motion for an examination because defendant's mother told him of the incident concerning the blow from the baseball bat. Thereafter, in ordering the examination, it does not appear that the trial court actually made a finding that there was reasonable cause to believe that defendant had a mental disease because the assistant circuit attorney consented to the order. The conclusion that defendant was then competent is fortified by the opinion of his physician that four years

after he was struck by the baseball bat he could understand the nature of charges that might be brought against him. When the report showing full competency was filed defendant did not seek any additional examination, nor did he in any way contest the opinion contained in the report or request a hearing on the issue. In this situation § 552.020(6) provides that "the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion." What the court did was to enter the following order: "Medical report received. Cause removed from Mental Examination Docket and placed on Trial Docket. Cause set for trial on July 8, 1968." We think that order is tantamount to an order finding that defendant was fit to proceed. The statute under which the examination was ordered provides that "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." § 552.020(1). The court obviously approved the report and concluded that defendant was fit to proceed or it would not have ordered the case set for trial. The court expressly reaffirmed that finding at the time of deciding the 27.26 motion.

In support of his contention defendant relies on Carpenter v. State, Mo.Sup., 449 S.W.2d 584, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Brizendine v. Swenson, D.C., 302 F.Supp. 1011. All of those cases are clearly distinguishable on the facts and, in our opinion, do not support defendant's contention.

As indicated, it is our view that the findings and judgment of the trial court in the respect under consideration were not clearly erroneous.

The remaining contention is that the trial court erred in finding that defendant's plea of guilty was made voluntarily with an understanding of the nature of the charge. In connection with this point it should be noted that the court used considerable care in complying with S.Ct. Rule 25.04, as shown by the following: "Mr. Dobberstein: At this time, your Honor, the defendant will withdraw his former plea of not guilty and enter a plea of guilty to the charge. * * * The Court: Mr. Jones, have you authorized Mr. Dobberstein to make that announcement and do you desire to plead guilty in this case? Mr. Jones: Yes, sir. The Court: And do you understand that you are pleading guilty to a charge of murder second degree? Mr. Jones: Yes, sir. The Court: And previous to pleading guilty have you had the advice of Mr. Dobberstein as your attorney? Mr. Jones: Yes, sir. The Court: And are you satisfied with his legal advice? Mr. Jones: Yes, sir. * * * The Court: Now, have you talked with members of your family and do they know that you plan to plead guilty here today? Mr. Jones: Yes, sir. The Court: Did Mr. Dobberstein explain to you the consequences of a plea of guilty; in other words, that you are admitting that you are guilty and that the Court will now or later pronounce a sentence of imprisonment against you? Mr. Jones: Yes, sir. * * * The Court: Do you understand that by pleading guilty you waive your right to a trial by jury and your right to an appeal and you leave the matter of further proceedings in the hands of the judge; do you understand that? Mr. Jones: Yes, sir. * * * The Court: Mr. Jones, you expected, didn't you, when you pleaded guilty that you would be sentenced to a term of twenty years in the Department of Corrections of the State of Missouri? Mr. Jones: Yes, sir. The Court: Do you also understand, Mr. Jones, that you cannot withdraw this plea of guilty and return a plea of not guilty at a later date? Mr. Jones: Yes, sir. The Court: Mr. Jones, have you been threatened or coerced or promised anything for this plea of guilty here today? Mr. Jones: No, sir."

■ Defendant complains of the fact that the court failed to advise him as to the range of punishment. This would not be prejudicial in this case because the sentence defendant was to receive had been agreed upon in advance; and also, we find from his own testimony that defendant knew the range of punishment. He also says the court should have advised him as to the elements of second degree murder. We know of no requirement that the court must explain each technical element of an offense. It is sufficient for defendant to have an understanding of the nature of the charge. In this instance defendant knew the offense with which he was charged, and when the assistant circuit attorney related the facts as to how the killing occurred the defendant stated that they were "generally correct." Defendant seems to think he was not guilty because he accidentally shot Dillman while intending to shoot Spider. He is clearly in error in that belief. See State v. Martin, Mo.Sup., 336 S.W.2d 394 [2]. We rule that defendant was sufficiently advised concerning the nature of the charge.

Defendant also contends that he was misled because he understood that he would start serving his sentence in this case as of the date of his arrest but that it did not start until two years later. After defendant was sentenced his attorney asked for credit for jail time and the court allowed it. It appears from the *brief* that defendant was at liberty on probation on another charge at the time he committed the instant offense. Apparently that probation was subsequently revoked and that sentence was served before he began serving the one here in question. There is a complete failure of proof on this point and we accordingly rule that it is without merit.

■ There was no evidence to support the contention that defendant was suffering from withdrawal symptoms from drug addiction at the time he entered his plea of guilty. There was, however, evidence that he had taken a "shot" of drugs sometime before he went to court the morning of the hearing. We think that occurrence is doubtful since he had been confined for almost ten months and it should be difficult to obtain drugs while in jail. In any event, defendant testified that he remembered what happened when he entered his plea. There is no substantial evidence to indicate that his powers of understanding and decision had been impaired at that time by the use of drugs.

It is also suggested in the brief that defendant was coerced into pleading guilty because a deputy sheriff had said that he had better take the 20 years or he would get 50 if he didn't. This contention is refuted by defendant's own testimony. When asked about the statement of the deputy he answered: "He said something; I really didn't pay much attention to him. I wasn't interested in what he had to say." In that connection we note that defendant testified that one reason he entered a plea of guilty was because his attorney said he would get 50 years if he went to trial. We consider that statement (if actually made) to be a good faith appraisal of the outcome of a trial and that it was appropriate advice to be given by an attorney to his client.

■ In conclusion we hold that the trial court was fully supported by the evidence in finding that the plea of guilty was voluntarily entered with complete understanding of the nature of the charge. The defendant knew what his sentence would be if he entered a plea and arrived at the conclusion to take that action after consulting with a competent attorney, as well as with his wife, his mother and brother. There is no suggestion of substance that any promise or threat was made or that he was misled in any fashion. In the situation before us it certainly cannot be said that the findings of the trial court were "clearly erroneous."

We have considered all of the cases cited by defendant on this point and have concluded that they do not support the contentions made.

Judgment affirmed.

All concur.