**Paul D. MILLER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD26142.**

Missouri Court of Appeals, Kansas City District.

July 23, 1973.

Ronald P. Zolotor, Excelsior Springs, David Lee Wells, North Kansas City, for appellant.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and SWOFFORD, JJ.

SHANGLER, Judge.

The appeal is from an order denying a Rule 27.26, V.A.M.R. motion to vacate a judgment of conviction on a plea of guilty to robbery and to set aside a thirty year sentence entered on the judgment.

The initial Rule 27.26 motion, brought *pro se,* and the amendments of court appointed counsel alleged a number of constitutional and statutory defects against the judgment. On this appeal, the points preserved for decision assert (1) the plea of guilty was involuntary, (2) appellant did not have effective assistance of counsel, (3) appellant was suffering from a mental disease or defect and did not understand the nature of the proceedings against him, (4) appellant was improperly sentenced in that no record was made of the proceedings and (5) the trial court neither entered a finding, as required by statute, nor determined by hearing, as required by due process, that appellant was fit to proceed to plead guilty to the offense. After an evidentiary hearing, all issues on the Rule 27.-26 motion were adjudicated against appellant. The judge who adjudicated the post-conviction motion did not preside at the plea proceedings.

Appellant was charged with the robbery of items of jewelry from the person of a female at her place of employment. Appellant accomplished his criminal purpose by first battering the victim into submission and then throttling her with her own stocking. Appellant was arrested nearby and made a prompt confession of guilt to the officers. Counsel was appointed on his behalf but after several months appellant replaced him by the retained counsel whose performance he now complains was ineffective. While still represented by appointed counsel, appellant had written the prosecuting attorney offering to plead guilty to the charge and expressing a willingness to accept a sentence of from 30 to 50 years' imprisonment on condition that the execution of the sentence be suspended and a five year probation be granted. This overture went without apparent response.

Retained counsel assumed the defense. After consultation with appellant and his parents, a review of the predecessor attorney's file, the prosecutor's jacket which contained statements of the witnesses and arrest reports, the court's file, and having expressed to appellant the serious disadvantage resulting from his admission of guilt, retained counsel concluded that the only feasible defense was that of mental disease or defect excluding responsibility. Accordingly, counsel made formal motion for psychiatric examination of appellant under the provisions of Chapter 552, RSMo 1969, V.A.M.S., to determine whether appellant, at the time of the conduct alleged in the Information, was suffering from a mental disease or defect excluding responsibility, and to determine also whether appellant was competent to understand the nature of the proceedings against him and to assist counsel in his defense. The motion for mental examination was asserted on counsel's information and belief— based upon his own investigation and observations, as well as his knowledge of a prior psychiatric examination of his client during a rape prosecution—that appellant was incompetent. The report from the Missouri Mental Health Center at Fulton, where the examination was conducted, certified that appellant was not suffering from a mental disease or defect within the meaning of § 552.010, that he had the capacity to understand the proceedings against him and to assist in his own defense and that, at the time of the alleged

robbery, appellant knew and appreciated the nature, quality and wrongfulness of his conduct and was capable of conforming his conduct to the requirements of law. In short, it was an opinion that appellant was competent to stand prosecution and conviction for the crime.

A copy of the report was furnished to retained counsel who discussed the findings with appellant's parents and, seemingly, with appellant also. Counsel probed with the parents the possibility of obtaining an independent psychiatric examination of the appellant for the purpose of furthering the defense of mental disease or defect excluding responsibility, but they could not afford the cost. This resulted in the abandonment of the defense. As counsel put it at the Rule 27.26 hearing: "I know that to establish that defense you need some medical proof either from Fulton or from an independent psychiatrist. Fulton turned us flat down, and we did not have sufficient funds or think it advisable to get a private physician, and therefore it was no defense because we couldn't prove it". [Actually counsel neither pleaded the defense of mental disease or defect excluding responsibility nor gave the written notice of his purpose to rely on the defense required by § 552.030(2).] With the case in this posture, counsel advised appellant that a guilty plea would bring a less severe punishment than conviction by a jury. The court accepted the plea of guilty and, at the request of counsel, ordered a pre-sentence investigation.

Appellant's argument makes it clear that his contentions of involuntariness of plea of guilty and ineffective assistance of counsel subsume the remaining three grounds asserted for relief so to the extent that our disposition of the appeal requires that they be treated at all, they will be considered together.

■ A plea of guilty is a confession in open court, but it is more than merely an admission of past conduct; it is also a conviction. Boykin v. Alabama, 395 U.S. 238, 243 [17–11], 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As such it should be received with caution and only if freely and voluntarily made with understanding of the nature of the charge. Pulliam v. State, 480 S.W.2d 896, 903 [2] (Mo.1972); Rule 25.-04. A plea of guilty involves waiver of constitutional rights, among them, the right against compulsory self-incrimination, right to trial by jury and the right to confront one's accusers, and thus presupposes a criminal defendant with the capacity to intelligently and knowingly adopt a waiver. Brady v. United States, 397 U.S. 742, 748 [5–8], 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). An accused is competent to plead guilty or otherwise fit to proceed in a criminal prosecution if, at the time, he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . has a rational as well as factual understanding of the proceedings against him". Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Brown v. State, 485 S.W.2d 424, 429 [5, 6] (Mo.1972). And a conviction of an accused, legally incompetent, violates due process. Pate v. Robinson, 383 U.S. 375, 377, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

■ The argument which pervades appellant's contentions of involuntariness of plea of guilty and ineffectiveness of counsel is that at the time of the plea, appellant lacked the capacity to understand the proceedings against him or assist in his own defense, and therefore was unfit to proceed. Appellant's competency to stand trial was submitted for psychiatric determination under the procedures of § 552.020, subsection 6 of which provides in relevant part:

If neither the state nor the accused nor his counsel contests the opinion referred to in subsection 3, subdivision (3), of this section relative to fitness to proceed, the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its

own motion. If any such opinion is contested the court shall hold a hearing on the issue.

§ 552.020 reflects the basic common law value that, as a matter of public conscience and judicial decorum, an accused who lacks mental capacity to understand the proceedings against him or to act rationally in his own defense, may not be submitted to criminal prosecution. The United States Supreme Court in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) invested § 552.020 with the new dimension, of constitutional proportion, that where the circumstances at a criminal trial create doubt of an accused's fitness to proceed, due process of law requires that the trial court conduct a hearing on the question, whether requested or not.[1] McCormick v. State, 463 S.W.2d 789, 790 (Mo.1971).

The report of psychiatric examination which certified that appellant was fit to proceed was not contested by either the state, the accused or his counsel. And it is clear that prior to the entry of the guilty plea, the sentencing court did not make a determination and finding of record on the basis of the report, as required by § 552.020(6), that appellant was fit to proceed. Appellant contends that absent such an express finding of record, his plea of guilty was involuntary and, further,

that the court's failure, *sua sponte,* to order a hearing on the issue of his fitness to proceed, when reasonable cause appeared, was a denial of due process of law. Appellant contends also, counsel's failure to contest the report, and thus mandate a hearing, amounted to ineffective assistance and nullified the plea procedure. The first contention is answered quite simply. The motion for order for mental examination was filed December 1, 1970 and was promptly allowed. The certificate of examination from the Missouri Mental Health Center at Fulton issued on January 13, 1971 and without contest became part of the record of the proceeding. The court's docket entry of March 8, 1971 setting the cause for trial on April 5, 1971 was equivalent to an approval of the report and a determination by the court that defendant was fit to proceed to trial. Jones v. State, 471 S.W.2d 223, 226 [2] (Mo. 1971); Maggard v. State, 471 S.W.2d 161, 164 [2] (Mo.1971). Nor do we find, on the information properly before the sentencing court, that the failure to conduct a hearing, *sua sponte,* on the issue of fitness to proceed either violated § 552.020(6) or denied appellant due process of law.

On the record before us, this evidence concerning appellant's history of mental illness and suggestive conduct were known to the court at the time his fitness to proceed was implicitly determined by acceptance of

1. *Pate* held, in the circumstances of that case, the court's failure to conduct a hearing not only violated an Illinois statute which requires the court to hold a hearing, *sua sponte,* to determine a criminal defendant's fitness to stand trial where the evidence raises a "bona fide doubt" of his competence for that purpose, but also denied him constitutional due process. Although *Pate* does not propose which quantum of evidence of incompetency will require a court, *sua sponte,* to conduct a hearing on that issue, the Illinois statutory "bona fide doubt" has become insinuated into some of our appellate decisions as the standard for such determination. See Maggard v. State, 471 S.W.2d 161, 165 [3] (Mo.1971); Jones v. State, 471 S.W.2d 223, 226 [2] (Mo. 1971); Newbold v. State, 492 S.W.2d 809, 818 [4, 5] (Mo. 1973). Other Missouri decisions have applied a "substantial suspi-

cion" standard—Newman v. State, 481 S.W. 2d 3, 6 [2] (Mo.1972); McCormick v. State, 463 S.W.2d 789, 790 (Mo.1971), while still another defines the trial court's duty in terms of "reasonable doubt", Drope v. Missouri, 498 S.W.2d 838 (Mo.App.St. LD, No. 34797, April 1973). The procedures of § 552.020 which require a trial court to act on "reasonable cause" (Subsection 2), have been determined to be compatible with the constitutional requirements of *Pate.* McCormick v. State, *supra,* 463 S.W.2d l. c. 790; Griggs v. State, 479 S.W.2d 478, 480 [1] (Mo.1972). Although the statutory language seems to suggest a reasonable doubt standard the various designations have been used interchangeably [Brown v. State, 485 S.W.2d 424, 428 [4] (Mo.1972)] without distinction.

the plea of guilty: The certificate of psychiatric examination disclosed that appellant, then 28 years of age, had engaged in abnormal sexual behavior since he was 13 years old by stealing feminine undergarments in order to excite masturbation. At 18 years of age he joined the Navy and then married. His marriage was chaotic as was his naval career, where he was recurrently disciplined. In 1966, then 24 years of age, he spoke of homicide and suicide and was given psychiatric hospitalization at the United States Naval Station at St. Albans, New York. While there, his depression lifted quickly and he became an outspoken leader of an anti-Navy group. He was diagnosed Paranoid Personality and was recommended for discharge as unsuitable, and was discharged. In 1967, appellant was convicted for rape. Pre-trial psychiatric examination for that offense under Chapter 552 at the Missouri Health Center at Fulton revealed a diagnosis of Emotional Instability Reaction, Chronic, Severe (Hysterical Personality), but appellant was found fit to proceed to trial. In April 1968, appellant was convicted for purse stealing and served six months in the county jail. The report of examination for the conviction under review, as prelude for the finding of fitness to proceed, described appellant as having a good memory for both recent and remote events, that he was functioning in the range of average intelligence, that there was no evidence of any thought disorder and that appellant had "a good understanding of his legal status". From the recitations of the report, it is evident that some of the factual information which formed the basis for evaluation concerning appellant was furnished by his counsel to Dr. Merrifield, a certifying physician. The report contains no indication, however of any concern by counsel of the capacity of appellant to understand the proceedings against him or assist in his own defense.

At the plea of guilty proceeding of April 1971, appellant acknowledged to the court that he had been convicted for rape, for stealing and earlier, for breaking and entering. Appellant himself brought to the court's attention that which the certificate of psychiatric examination had already disclosed, appellant's commitment to the psychiatric ward of the St. Albans Naval Hospital and the diagnosis made of extreme hypertension and psychotic tendencies. Appellant's counsel then observed to the court: "I think he is suffering from some mental problem but not such as would excuse, at least, as found by Fulton, that would excuse him from the criminality of his acts, but I think there is definitely some problem."

The presentence report which was composed after the plea of guilty, and was available to the court at the May 1971 sentencing, disclosed no additional aberrant behavior. It did reveal, however, that at the time of the rape offense, appellant was under the care of a private psychiatrist who gave as his opinion that further outpatient treatment would be of questionable value and that recidivism was "definitely possible" at that time.

The evidence at the Rule 27.26 proceeding came only from appellant and his formerly retained counsel whose performance had been brought into question. No psychiatric testimony, either by witness or report, was adduced. At the hearing, appellant testified and former counsel also recalled, that at the sentencing proceeding (which was neither recorded nor transcribed), the judge had remarked: "I know this young man needs professional psychiatric help and I hope he can get it before it is too late". No other evidence bearing on appellant's mental condition at the time of the plea of guilty was developed at the post-conviction hearing. Appellant there also testified that former counsel had failed to inform him of his right under § 552.020(6) to contest the certification of competency to proceed, and thus mandate a hearing on that issue, a lapse which counsel seems to have conceded. The trial court made no finding on

this issue nor on the ultimate issue of whether appellant was fit to proceed at the time the plea of guilty was entered. Ordinarily, in such circumstance, appellate review would be premature and would require the cause to be remanded for determination, finding and conclusion on that issue. State v. Rose, 440 S.W.2d 441, 446 [5] (Mo.1969). Our disposition on another ground allows our decision without such compliance.

 The court is not required to conduct a competency hearing *sua sponte* in the absence of circumstances which render suspect the psychiatric opinion which has certified an accused fit to proceed. McCormick v. State, *supra,* 463 S.W.2d 1. c. 790; Newman v. State, 481 S.W.2d 3, 6 [2] (Mo.1972); Newbold v. State, 492 S.W.2d 809, 818 [4, 5] (Mo.1973). The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [Butler v. United States, 384 F.2d 522, 523 [1–3] (8th Cir. 1967)] and does not require the *sua sponte* hearing under Pate v. Robinson, *supra,* if the accused is not hindered in understanding the proceedings or in assisting counsel. United States v. Kaufman, 393 F.2d 172, 176 (7th Cir. 1968). That the trial judge at the plea of guilty proceeding may have felt appellant had a mental problem or needed psychiatric help, standing alone, is not expression of a reasonable doubt of appellant's competency to stand trial or to enter a plea of guilty. It is evident from the record that at the time of the guilty plea the trial court was aware of the pattern of appellant's prior criminal conduct, his singular sexual aberration, and the substance of his history of examination, confinement and treatment for psychiatric causes. Mental disease or defect excluding fitness to proceed, however, is not proved by repeated criminal conduct or episodes of sexual perversion. State v. Lowe, 442 S.W.2d 525, 529 [5] (Mo.1969); Drope v. State, 498 S.W.2d 838 (Mo. SLD No. 34797, June 5, 1973); § 552.010. Nor does the record

of the plea proceeding disclose that appellant behaved erratically before the court or that his counsel voiced serious doubts as to his client's competency to proceed—each a circumstance which would have required the trial court, even without request, to hold a hearing to determine appellant's fitness to proceed despite the certification of competency. Newbold v. State, *supra,* 492 S.W.2d 1. c. 819 [4, 5]; Wider v. United States, 121 U.S.App.D.C. 129, 348 F.2d 358 (1965). Under our decisions, the evidence before the trial judge at the guilty plea was not sufficiently cogent to render suspect the psychiatric report and certification of competency for trial and thus require, even in the absence of request, a hearing on that issue. Lansdown v. State, 464 S.W.2d 29 (Mo.1971); Jones v. State, 471 S.W.2d 223 (Mo.1970); Newman v. State, *supra;* Newbold v. State, *supra.*

 Appellant seriously contends that he lacked the capacity for rational understanding of the plea of guilty, its consequences and the available alternatives, that notwithstanding counsel's knowledge of the incapacity, counsel neither objected to the certification which found appellant fit to proceed—and thus mandate a hearing on that issue under § 552.020(6)—nor informed appellant of his right to contest the finding, and that the plea of guilty given under such disability was involuntary and the result of ineffective assistance of counsel. Where a plea of guilty has been entered, the claim of ineffective representation is material only to the extent that counsel's inadequacy bears on the issues of voluntariness and understanding. Barylski v. State, 473 S.W.2d 399, 402 [2] (Mo. 1971).

It is evident from the testimony given by counsel at the Rule 27.26 hearing that at the time of the plea of guilty and the imposition of sentence thereafter he harbored serious doubts of appellant's capacity to understand the proceedings and to cooperate in the defense:

Q. Do you think Mr. Miller fully understood the proceedings that were

taking place at the time of the sentencing?

A. I am not so sure that Mr. Miller ever fully understood anything during the time—well, from looking at his background, ever, back for years.

Q. Would this include at the time that the crime was committed?

A. Well, it is my personal opinion, here again, not professionally, it is my personal opinion that Mr. Miller is crazy.

Q. Now, do you believe, even though he may be crazy, of course, as a lawyer do you know there is a legal distinction—

A. Right.

Q. —between a person may be having a mental problem—

A. Certainly.

Q. —and of being legally insane, as a legal defense in the commission of a crime.

In your opinion would you believe from your investigation of Mr. Miller's case that he was mentally incompetent at the time this crime was alleged to have been committed?

A. Legally, or as I would say, to me, he was incompetent. I mean, he is doing things that sane people don't do. Now, from a legal standpoint we will put it this way. If he was not insane, within the meaning of the law, then the law is wrong, because he just isn't all there.

Q. Did he fully cooperate with you during the course of your investigation of his case?

A. Yes, I thought he did. By that, I mean, he didn't give me any trouble.

Q. —do you believe that after you explained Mr. Miller's rights to him that he fully understood those rights at the time you were talking to him?

A. As I said, I am not so sure that Mr. Miller ever understood any time, at least back to when he was a small boy.

. . . . .

Q. After the psychiatric report came back from the State Hospital from Fulton, did you impress upon Judge Rooney then to make an order as to the determination of the mental competency of Mr. Miller to stand trial in this case?

A. Did I impress it on the Judge? No.

Q. Did you pursue the matter further through the court by trying to obtain a determination from the Judge whether or not Mr. Miller was competent to understand the nature of the proceedings then occurring?

A. Do you mean did I file any further pleadings, or make any further requests, or anything?

Q. Yes.

A. No.

 A basic purpose of the due process rule which prohibits prosecution of an incompetent accused is to ensure the integrity of adjudication. As such, the rule presupposes a criminal prosecution as an adversary proceeding: a defendant sufficiently rational to assist and oversee counsel [Pate v. Robinson, *supra,* 383 U.S. 1. c. 843, 86 S.Ct. 836, 15 L.Ed.2d 815], led by "the guiding hand of counsel at every step in the proceedings". [Powell v. State of Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1923)]. If in the course of the prosecution defendant's counsel comes to the honest belief that his client lacks present capacity for rational understanding and cooperation, the integrity of the adversary process and his duty of advocacy require counsel to use the procedures the law

allows for an adjudication of that issue. Franklin v. State, Mo., 455 S.W.2d 479, 1. c. 483 [1–5]; Kibert v. Peyton, 383 F.2d 566, 568 [1–5] (4th Cir. 1967); Wider v. United States, *supra;* Newbold v. State, *supra.* Consistently with this principle, our courts have placed much reliance upon the absence of doubt by defense counsel as to his client's competency to assume the regularity of criminal proceedings. Jones v. State, 471 S.W.2d 223, 226 [2] (Mo.1970); Newbold v. State, *supra,* 492 S.W.2d 1. c. 819 [4, 5]; McCormick v. State, *supra,* 463 S.W.2d 1. c. 791; Griggs v. State, 479 S.W.2d 478, 380 [1] (Mo.1972).

■ On the record before us, we must sustain appellant's claim that he was denied effective assistance of counsel, but in so doing we do not question the general competence of counsel who has on other occasions demonstrated professional skill of a high order, and conclude merely that his stewardship of this appellant's rights was not adequate to afford him a fair trial. McQueen v. State, 475 S.W.2d 111 [concurring opinions of Finch, C. J., 1. c. 116 and of Donnelly, J., 1. c. 119] (Mo. banc 1972). Despite serious doubts of his client's competency to understand the proceedings and to cooperate in the defense, counsel neither objected to Dr. Merrifield's certification of his client's fitness to proceed—and thus require the court's adjudication of that question [§ 552.020(6)]—nor voiced his strong doubts to the court, and thus induce the court's *sua sponte* inquiry of competency. Newbold v. State, *supra,* 492 S.W.2d 1. c. 819; Wider v. United States, *supra.* Rather, counsel advised appellant to plead guilty, and thus waive the constitutional rights which attend such a conviction, although counsel honestly believed appellant lacked the capacity for such waiver. Nor concededly, did counsel inform appellant of his statutory right to contest the certification of competency to stand trial which, indeed, in view of counsel's belief of his client's incapacity for understanding, may have been a futile gesture. That merely added to counsel's burden to use his professional skill and judgment to do for his client what he could not do for himself.

Although at the sentencing counsel did express his concern to the court that appellant was "suffering from some mental problem", he did not indicate to the court then or later his firm belief that appellant could not understand the proceedings or cooperate in the defense. And there is no basis to impute such knowledge to the court, either from the records or testimony. Although appellant's counsel was a source of information for the evaluation made by Dr. Merrifield, whom counsel knew personally, the certification of competency for trial—which became a record in the criminal proceedings—made no mention of counsel's concern for appellant's inability to understand and cooperate. From this we must assume that counsel either did not disclose his doubts, or if he did, Dr. Merrifield did not take them into account, in which event it would have been counsel's duty to contest the report and subject Dr. Merrifield's opinion to cross-examination.

■ The presumption that a judicial determination of fitness to proceed arises from an uncontested certification of competency when the court proceeds to trial without an express record finding of competency [Jones v. State, *supra,* 471 S.W.2d 1. c. 227; Maggard v. State, *supra,* 471 S.W.2d 1. c. 164] supposes a waiver of objection and hearing [§ 552.020(6)] and a defendant and counsel competent to make such waiver. Appellant was not informed of his right to object and waive, assuming he had capacity to exercise the right, and counsel's representation was ineffective for that purpose. "[I]t is contradictory to argue that a defendant may be incompetent and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial". Pate v. Robinson, *supra,* 383 U.S. 1. c. 384, 86 S.Ct. 1. c. 841 [2, 3]. The due process right of an accused to face trial only while capable of understanding and assisting in the proceeding is not subject to waiver and

it follows that his counsel cannot waive it for him. Kibert v. Peyton, *supra*, 383 F.2d 1. c. 569 [2, 3]. On this record, the question of appellant's fitness to proceed has yet to be determined according to law.

■ We conclude that the trial court's Rule 27.26 finding that appellant was effectively represented by counsel at the plea of guilty proceeding is clearly erroneous. We remand the cause to the trial court for the initial inquiry whether at this time an effective hearing can be held on the issue of appellant's fitness to proceed on April 1971 when the plea of guilty was entered. If such a hearing is feasible, it must be held; if not, Pate v. Robinson, *supra*, 383 U.S. 1. c. 842 [11, 12], 86 S.Ct. 836 and our duty to correct a manifest injustice require that the conviction be set aside and appellant be allowed to withdraw his plea of guilty. Greer v. Beto, 379 F.2d 923, 927 (5th Cir. 1967); Rule 27.25.