# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## NOVEMBER, 1997 SESSION

FILED

February 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 03C01-9701-CC-00036 |
| Appellee, | ) | |
| | ) | Blount County |
| vs. | ) | |
| | ) | Honorable D. Thomas Kelly, Judge |
| **STEVE JOYNER**, | ) | |
| | ) | |
| | ) | (Probation Revocation) |
| Appellant. | ) | |

FOR THE APPELLANT:

MACK GARNER
District Public Defender
419 High St.
Maryville, TN 37804-4912

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

MICHAEL L. FLYNN
District Attorney General

PHILLIP H. MORTON
Assistant District Attorney General
363 Court St.
Blount County Courthouse
Maryville, TN 37804-5906

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

**OPINION**

The defendant, Steve Joyner,[1] appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the revocation of his probation by the Circuit Court of Blount County. On June 22, 1992, the defendant pleaded guilty to conspiracy to sell lysergic acid diethylamide, a Class C felony, and was sentenced to serve eight years as a Range 2, multiple offender.[2] The trial court suspended all but thirty days of the sentence and ordered the defendant to serve seven years and eleven months on supervised probation. The court issued a violation warrant on July 16, 1996, and, after a hearing, the court revoked the defendant's probation and ordered him to serve one year in the county jail and seven years in Community Corrections.[3]

In this appeal, Joyner contends that the state's delay in filing the probation violation report constitutes a denial of his right to a speedy trial. After carefully reviewing the record on appeal and the applicable law, we hold that the delay, in this instance, violated neither his right to a speedy trial nor his due process rights, and we affirm the trial court's order revoking the defendant's probation.

The defendant was placed on probation in August, 1992 in Blount County. Shortly thereafter, he moved to Knox County and his probation was transferred. Although the exact dates are not in the record, Joyner admits that he

---

[1] The indictment names the defendant in this case as Steve "Joyner." Although other documents in the record spell the defendant's surname as "Joiner," we follow the spelling used on the indictment in accordance with the custom of this court.

[2] According to the presentence report, the defendant also pleaded guilty to possession of drug paraphernalia. The record contains no judgment form reflecting this conviction.

[3] The defendant received 60 days of jail credit and will be eligible for work release provided that he pay $50.00 per week toward his fines and costs from his wages. He will also be eligible for any Community Correction programs that the CCP officer believes are appropriate while he is in jail.

was convicted of driving under the influence in August, 1993 and of driving on a revoked license in the summer of 1994. He testified that he informed his Knox County probation officer of both offenses. Joyner also admitted that he was under investigation in 1994 for having sexual relations with a sixteen-year old girl but that no charges were ever filed. In February, 1995, Joyner returned to Blount County, and, in August, 1995, he tested positive for marijuana. Finally, on July 10, 1996, a Blount County probation officer, who had recently received the defendant's case, filed a probation violation report, alleging that, in addition to the two convictions and the positive drug screen, the defendant had failed to pay the costs of his probation after October, 1995 and had made only sporadic payments to the court. The trial court issued an arrest warrant on July 16, 1996. The trial judge revoked Joyner's probation on September 24, 1996 after conducting an evidentiary hearing.

The defendant now contends that the state's delay in bringing these violations to the attention of the trial court violates his right to a speedy trial under the Sixth Amendment to the United State Constitution and Article 1, Section 9 of the Tennessee Constitution. The state contends that the defendant has waived this issue by his failure to raise it in the trial court. On the merits of the issue, the state argues that this case raises no question involving the right to speedy trial and that, although the facts may support a due process argument, the defendant's Fifth Amendment right to due process was not violated in this case. We agree with the state's conclusions although our reasoning differs in some respects.[4]

The United States and Tennessee Constitutions guarantee the criminally accused the right to a speedy trial. U.S. Const. amends. VI & XIV; Tenn. Const. art. 1, § 9; State v. Demetrius Dewayne Utley, --- S.W.2d ---, No. 01-S01-9604-CR-00120 slip op. at 4 (Tenn., Nov. 17, 1997). The right to a speedy trial is

---

[4]

The defendant failed to raise this issue in the trial court as required by Rule 12(b) of the Tennessee Rules of Criminal Procedure and Rule 36(a) of the Tennessee Rules of Appellate Procedure, and is, therefore, not entitled to review. However, we choose to review the issue on its merits. Tenn. R. App. P. 2.

also statutory in Tennessee. Tenn. Code Ann. § 40-14-101 (1990). A probation revocation proceeding is a continuation of the original criminal prosecution, and the defendant in such a proceeding has a constitutional right to a speedy trial on the offense of violation of the terms of probation. Allen v. State, 505 S.W.2d 715, 719 (Tenn. 1974); State v. Robin N. Clark, No. 03C01-9603-CC-00118, slip op. at 6-7 (Tenn. Crim. App., Knoxville, Mar. 25, 1997); State v. Futina M. Carlton, No. 01C01-9512-CR-00417, slip op. at 2 (Tenn. Crim. App., Nashville, April 26, 1996). However, no Sixth Amendment speedy trial problem arises until after the state begins formal accusatorial proceedings, such as an arrest or grand jury action, against the defendant. United States v. Marion, 404 U.S. 307, 313, 92 S. Ct. 455, 459-463 (1971); State v. Gray, 917 S.W.2d 668, 671(Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981).[5] In this case, the defendant's arrest for a violation of probation in July of 1996 triggered the defendant's speedy trial right, and the hearing was held two months later. Clearly the defendant suffered no abridgment of his right to a speedy trial.

Our inquiry may not stop with this conclusion, however, because the violation report indicates that the most recent violation of probation occurred eleven months prior to the defendant's arrest and that other violations occurred a year or two years earlier. Although delay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial, the delay may occur in a manner that infringes upon an accused's right to due process under the Fifth Amendment. United States v. Lovasco, 431 U.S. 788, 789, 86 S.Ct. 2044, 2048 (1977); Marion, 404 U.S. at 324, 92 S. Ct. at 465; Demetrius Dewayne Utley, --- S.W.2d ---, slip op. at 10; Gray, 917 S.W.2d at 671; Baker, 614 S.W.2d at 354. Therefore, we must determine whether the delay violated the defendant's due process rights.

---

[5]

Recently the Tennessee Supreme Court held that the issuance of an arrest warrant is not sufficient to trigger the right to a speedy trial in Tennessee. Demetrius Dewayne Utley, --- S.W.2d --- , slip op. at 9.

4

Our supreme court adopted the test devised by the United States Supreme Court in Marion in State v. Baker, 614 S.W.2d 352 (Tenn. 1981). Although, the Marion Court recognized the necessity of an ad hoc approach to such cases, it also formulated the following test:

> (T)he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellee's right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

Marion, 404 U.S. at 324, 92 S.Ct. at 465.[6] A recent formulation of the test requires that the accused prove that (1) there was a delay, (2) the accused sustained actual prejudice as a direct and proximate result of the delay, and (3) the state caused the delay in order to gain tactical advantage over or to harass the accused. State v. Dykes, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990).

In State v. Gray, 917 S.W.2d 668 (Tenn. 1996), the Tennessee Supreme Court recently distinguished between "pre-indictment" delay and "pre-accusatorial delay" in a due process case. Id. at 671-673. A "pre-indictment" delay occurs when the state knows that an offense has been committed but delays in bringing charges against the accused. Id. at 671. A "pre-accusatorial delay" occurs between the commission of the offense and the commencement of formal proceedings in a case in which the state was not aware that the defendant had committed an offense. Id. The Gray court held that the three-pronged test in Dykes applied only to those cases in which the state had knowledge of the offense. In

---

[6]

The Baker court remarked that this court adopted the same test in Halquist v. State, 498 S.W.2d 88, 93 (Tenn. Crim. App. 1972) without mentioning Marion. We note that the test adopted in Halquist states that "an unreasonable delay between the commission of the offense and the arrest may violate the defendant's constitutional rights if the delay results in prejudice to him or was part of a deliberate, purposeful and oppressive design for delay." Halquist, 498 S.W.2d at 93 (emphasis added). Baker, and the cases that follow Baker, substitute the conjunction "and" for the "or" in Halquist. Marion requires both substantial prejudice and delay for the purpose of gaining tactical advantage or for harassment. The language from Halquist is sometimes quoted verbatim without any recognition of the variation between the prejudice standards or the difference between "or" and "and." See State v. Gray, 917 S.W.2d 668, 671(Tenn. 1996); State v. Dykes, 803 S.W.2d 250, 255-256 (Tenn. Crim. App. 1990); Baker, 614 S.W.2d at 354.

those instances in which the facts of the offense have lain dormant, the court recognized that the stringent Marion-Dykes standard "places a daunting, almost insurmountable, burden on the accused by requiring a demonstration not only that the delay has caused prejudice but also that the State orchestrated the delay in order to obtain a tactical advantage." Gray, 917 S.W.2d at 673. To prevent unconstitutional, unfair, and unwarranted results in such cases, the court held that in determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused. Id.[7]

To summarize, our supreme court has adopted three different standards for determining whether a delay in prosecution warrants the dismissal of charges:

> A. In delays that occur between the commencement of formal proceedings and trial, the Sixth Amendment speedy trial analysis applies, and courts must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted a claim to his right, and (4) whether the defendant was prejudiced by the delay. Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972); Demetrius Dewayne Utley, --- U.S. ---, slip op. at 4-5; State v. Bishop, 493 S.W.2d 81, 83-84 (Tenn. 1973).

> B. In "pre-indictment" cases in which the state has knowledge of the offense and delays bringing formal charges against the accused, due process rights may be implicated. Gray, 917 S.W.2d at 671-673. In these cases, the accused must prove that (1) there was a delay, (2) the accused sustained actual prejudice as direct and proximate result of the delay, and (3) the state caused the delay in order to gain tactical advantage over or to harass the accused. Dykes, 803 S.W.2d at 256.

---

[7]
Based on this standard, the supreme court dismissed a 1992 indictment which charged the defendant with a single charge of carnal knowledge of a female under the age of twelve, an offense that allegedly occurred more than forty years earlier. Gray, 917 S.W.2d at 674.

C.    In "pre-accusation" cases, the state does not know that the offense has been committed. Gray, 917 S.W.2d at 673. To determine whether a due process violation exists, the trial court must consider (1) the length of the delay, (2) the reason for the delay, and (3) the degree of prejudice, if any, to the accused. Id.

The facts in the record indicate that the Dykes factors are applicable to this case.[8]  Without question, the state had knowledge of his convictions and of the positive drug screen as well as of his failure to make regular payment of his probation costs, fines and fees. The record clearly demonstrates that a lengthy delay occurred. The defendant's first violations occurred in 1993 and 1994, and he tested positive for marijuana in August of 1995.  The state did not charge him with those violations until July of 1996.  However, although the state's lengthy delay is troubling, the defendant has not carried his burden of demonstrating that the delay resulted in actual prejudice and that the state caused the delay to gain tactical advantage or to harass him.

In determining whether a delay has violated due process, the most critical factor is the prejudice to the accused. State v. James Webb, No. 02C01-9512-CC-00383, slip op. at 14 (Tenn. Crim. App., Jackson, Feb. 27, 1997), perm.

---

[8]

We note that In dismissing the indictment in Gray, the supreme court declared that "due process is flexible and calls for such procedural protections as the particular situation demands." Gray, 917 S.W.2d at 673 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972)).  The major reason for applying differing standards to speedy trial and due process cases is that statutes of limitation provide the first barrier of protection against prejudice arising from a lapse of time between the commission of a crime and an indictment or arrest. Marion, 404 U.S. at 321-323, 92 S. Ct. at 463-464; Gray, 917 S.W.2d at 673.(Citations to other cases omitted).  In Gray, the supreme court specifically noted that the statute of limitations provided the defendant with no protection from charges relating to events that allegedly occurred forty years in the past. Gray, 917 S.W.2d at 673. Similarly, those accused of probation violations receive no protection from statutes of limitations.  Nothing in our statutes requires the state to file a probation violation report within a given time period other than the requirement that it be filed prior to the expiration of the sentence. See Tenn. Code Ann. § 40-35-310 (Supp. 1996).  Therefore, in some instances, the less stringent standard in Gray could conceivably apply to a probation revocation case even though the facts would ordinarily place it within the Dykes analysis.

app. denied (Tenn. 1997) (quoting Jones v. Greene, No. 01A01-9505-CH-00187 (Tenn. App. December 5, 1996)). We cannot say that the delay hampered the defendant in the presentation of his defense. The record is devoid of any evidence of prejudice that was the "direct and proximate result of the delay." Dykes, 803 S.W.2d at 256. The defendant does not allege that witnesses were unavailable or that evidence was lost. See James Webb, slip op. at 14. In fact, the defendant admitted the violations in open court. Unlike cases involving speedy trial violations, this defendant suffered no lengthy pretrial incarceration, nor was he subjected to public disrepute during the delay. As the state points out, he was given an additional period of freedom, a freedom which he abused by further violating the conditions of his probation. Absent any proof of prejudice, no further analysis is required. State v. Baker, 614 S.W.2d 352, 353-354 (Tenn. 1981). However, we note that there is no evidence the delay in this case was the result of anything other than unfortunate bureaucratic inefficiency.

In conclusion, we find that due process considerations do not require that this court reverse the trial court's judgment in this case. The order of the trial court revoking the defendant's probation and ordering him to serve one year in the county jail and seven years in Community Corrections is affirmed.

_____
CURWOOD WITT, Judge

CONCUR:

_____
Joe B. Jones, Presiding Judge

_____
Paul G. Summers, Judge

8