**STATE of Missouri, Respondent,**

v.

**Bobby D. GOODPASTER, Appellant.**

**No. 56521.**

Supreme Court of Missouri,
Division No. 2.

May 8, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

R. H. Mos, Jr., Farley, for appellant.

GERALD M. SMITH, Special Judge.

Defendant was tried and convicted as a second offender, of stealing property of a value of more than $50 and was sentenced to four years. He appeals.

His contentions on appeal are (1) the evidence was not sufficient to permit conviction and (2) the trial court erred in permitting testimony of a deputy sheriff of a statement made to him by defendant after defendant was represented by counsel. We take these in inverse order as the first point

is to a degree dependent upon resolution of the second.

■ The statement in question was made to the deputy sheriff on November 3rd, 1970, in the sheriff's office. Prior to that time defendant had been charged with the stealing, had had a preliminary hearing and arraignment and was free on bond. He was represented by counsel and this fact as well as the name of counsel was known to the deputy. The only testimony concerning the circumstances surrounding the statement came from the deputy. Defendant came by the sheriff's office a day before November 3, and left word that he wanted to talk to the deputy the next day. On November 3 the deputy waited after the end of his shift for defendant. When defendant arrived he stated he wished to give the deputy information concerning crimes in the county. The deputy read defendant his "Miranda rights" and defendant signed a waiver of counsel.

Throughout the discussion which followed the deputy refrained from asking any questions concerning the crime for which defendant stood charged. In the course of the discussion defendant stated that he had sold the tools which he was charged with stealing to a Red Shanks. The deputy testified the statement "came out of the blue," was a surprise, was not in response to a question. The deputy made no attempt to discuss the tool theft before or after the statement and asked no questions concerning the statement. The court, after a hearing on defendant's motion to suppress, found the statement to be voluntarily made and permitted the deputy to testify before the jury on the statement.

The essence of defendant's contention here is that since he had counsel and this was known to the deputy, an affirmative obligation arose requiring the deputy to notify counsel of the interview before it took place. In the absence of such notification defendant contends the state has failed to carry its burden of showing the statement was voluntary and it should not have been admitted. Reliance is placed upon Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and Westbrook v. Arizona, 384 U.S. 150, 86 S. Ct. 1320, 16 L.Ed.2d 429. We do not find that this case falls within the rules enunciated in those cases. In the *Miranda* opinion the court specifically said: ". . . The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. l. c. 478, 86 S.Ct. l. c. 1630).

*Miranda* and *Escobedo* involve in custody questioning which is not present here. *Westbrook* involved waiver of counsel at trial. *Massiah* involved a surreptitious interrogation by a co-defendant who unbeknownst to defendant was cooperating with the government agents and who allowed a radio transmitter to be installed in his car. The incriminating statements were held by the court to have been "deliberately elicited" by the federal agents in the absence of his counsel. Nor does this case fall under State v. Witt, Mo., 422 S.W.2d 304, which involved an in custody interrogation conducted after defendant was represented by counsel.

The facts here evidence a volunteered statement in no respect "deliberately elicited" by the deputy. Defendant was on bond. He was represented by counsel and had made court appearances with counsel present. The interview was at the specific request of defendant who voluntarily came to the sheriff's office. He was fully

warned of his constitutional rights including the right to have counsel present and he waived those rights. The questions of the deputy concerned exclusively matters other than the crime with which defendant was charged. The incriminating statement was blurted out and was not responsive to any question of the deputy. No further interrogation concerning the matter was made. The reason for defendant seeking the interview was to "see that something was done to Red Shanks" who, according to defendant had "committed more crimes than he [defendant] had . . ." Shanks was to be a witness against defendant. The court did not err in finding the statement voluntary and permitting the deputy to testify concerning it. See State v. Peck, Mo., 429 S.W.2d 247 [6].

 The evidence established that defendant was present on the farm of Mrs. Ben Thomas, in Platte County, Missouri on the afternoon of September 14, 1970, when he requested and was given permission to fish in the farm pond. It was raining that day. He drove his car toward the pond and parked it in the vicinity of a shed in which Virgil Thomas stored his tools. Virgil Thomas had seen the tools in the shed at noon on September 14, and testified that on September 16 they were gone and that he had given no one permission to take them. Defendant remained on the farm for only thirty minutes although when he arrived he had indicated his intention to remain all afternoon. His stated reason for changing his mind was that it "was too wet to fish." Although defendant would have had to walk through wet grass to get to the pond, Mrs. Thomas noticed when he left that his trousers were no wetter than his shirt or jacket. No one else went down to the shed that day. Red Shanks operates a service station in Dearborn, Missouri. On September 14 he saw the stolen tools in the trunk of defendant's car when defendant offered to sell them to Shanks. Shanks declined but testified that defendant sold them on that day to Virgil Branstetter. Branstetter testified he bought the tools but was unable to say from whom as he was

drunk at the time. There was evidence of a value of the tools in excess of $50.

The evidence was sufficient to make a case. Defendant was identified at the place from which the tools were taken, under somewhat suspicious circumstances. Shortly after that he was seen in possession of the tools and was offering them for sale. He stated to the deputy that he "sold them to Red Shanks." The evidence establishes more than merely suspicious circumstances or the opportunity to commit the crime as in State v. Castaldi, Mo., 386 S.W. 2d 392 and State v. Walker, Mo., 365 S.W. 2d 597 cited by defendant. The exclusive and unexplained possession of recently stolen property does not prove guilt as a matter of law, but it does warrant submission to the jury, particularly where additional circumstances point to the defendant's guilt. State v. Schleicher, Mo., 458 S.W.2d 351 [3]; State v. Sallee, Mo., 436 S.W.2d 246 [1–3]; State v. Burrage, Mo., 418 S.W.2d 101 [2–5].

Judgment affirmed.

All of the Judges concur.