Lawrence Joseph McCARTHY, Plaintiff-Appellant,

v.

STATE of Missouri, Defendant-Respondent.

No. 34964.

Missouri Court of Appeals,
St. Louis District,
Division 1.

Nov. 6, 1973.

Motion for Rehearing or to Transfer to Court En Banc or to Transfer to Supreme Court Denied Dec. 7, 1973.

S. Gerald Miller, Asst. Public Defender, Clayton, for plaintiff-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Mark D. Mittleman, Asst. Attys. Gen., Jefferson City, Gene McNary, Noel L. Robyn, Clayton, for defendant-respondent.

SIMEONE, Judge.

This is an appeal from a judgment and order of the Circuit Court of St. Louis County overruling movant-appellant's motion pursuant to Rule 27.26, V.A.M.R. to vacate a conviction and sentence for burglary in the second degree and stealing. The trial court, after a thorough examination of the previous record of the trial and after a lengthy hearing on the motion, overruled the motion. We affirm.

Movant-appellant, Lawrence Joseph McCarthy, pleaded not guilty to burglary and stealing charges and was tried before the court and jury in St. Louis County on June 24, 25, and 26, 1968. The late Honorable Michael J. Carroll presided. Sentence was imposed on December 6, 1968. McCarthy appealed that conviction which was affirmed by the Supreme Court. State v. McCarthy, 452 S.W.2d 211 (Mo.1970). Subsequently on March 31, 1971, movant filed this motion to vacate the judgment and sentence alleging that he was "mentally incompetent during his trial, lacked the mental capacity to aid in his defense, and was incapable of having the criminal intent with which he was charged," and that he was not afforded effective assistance of counsel. The motion was heard at intervals in February and March, 1972. The court made certain findings of fact and conclusions of law.

Several witnesses testified for the movant on the 27.26 evidentiary hearing. The thrust of their testimony was that for a long time, as early as 1963, they observed movant take paregoric, and often detected the smell of paregoric on him, and that he became sleepy and quiet afterward. Movant's brother John testified that on two occasions he took appellant to a hospital for treatment, and in June, 1968, he, too, observed movant take drugs and smelled paregoric. Movant's retained attorney asked John to try to get movant "off paregoric," and during the trial John saw his brother break out in a "heavy sweat."

Movant testified that he began using paregoric at age fifteen and was addicted to it by 1961 or 1962; that by 1967 he was taking six to ten two-ounce bottles per day and that he spoke to his attorney about his habit. He explained how he cooked down the paregoric and injected it into his veins. He went to several doctors including a Dr.

Wyatt in Kirkwood on the advice of a friend. By 1968, movant testified, he was consuming "in the neighborhood. of a pint [of paregoric] a day." He testified that during the court proceedings in June, 1968, he was using the paregoric. He admitted that prior to June 24, 1968 he did not present any evidence to Judge Carroll about his drug addiction because "I figured they might jerk my bond and I'd have to go cold turkey." "I am almost certain I didn't want the judge to know about it." During the trial movant stated that he could not stay awake and was awakened on several occasions by the bailiff. No motion was filed to determine whether movant was fit to proceed, nor did the court interrupt the trial to make such a determination.

At sentencing, the trial judge indicated to movant that "you had a problem that you were at the hospital in the City . . . that was one of the reasons for deferring sentencing . . ." And when asked if the problem was still there, movant answered negatively. He explained this by saying that he was "scared I'd get my bond revoked for being a drug addict."

At the time of sentencing on December 6, 1968, there were several charges pending against movant—burglary and stealing, carrying a concealed weapon, and possession of burglar tools. In February, 1969, movant was admitted to the state hospital for treatment of his drug addiction, and in May, 1969, a motion was filed by the prosecuting attorney for the appointment of a physician to examine movant to determine his fitness to proceed on one of the pending cases. On May 13, 1969, the motion for examination was denied by Judge Carroll.

On cross-examination he testified that before trial in June, 1968, began, he took enough of the drug to last during trial. He was able to recall the name of the judge, and could describe him, and he recalled the name of the prosecutor.

In May, 1969, a petition for involuntary hospitalization was filed in the probate court, and on July 18, 1969, the court found that movant "is a habitual user of narcotic drugs, to-wit, paregoric, to such an extent as to become what is commonly or known as an . . . 'addict.'" The court ordered movant to be committed to the Missouri Department of Mental Diseases for such confinement and treatment as may be necessary.

The bailiff, at the trial in June, 1968, testified that in the morning movant appeared "very alert" but that on several occasions he would awaken the appellant—sometimes at the court's direction. He estimated that the total of the times movant was asleep was four, and the "total amount of time would accumulate to about twenty or twenty-five minutes." The bailiff stated that at the time the verdict was read, movant did not act substantially any different than any of the other fifteen to twenty defendants who were tried while he served as bailiff.

A physician, Dr. Lois Wyatt, testified that she treated movant once when he came to her, in 1969. She gave him two injections, one for nausea and vomiting and the other for "shakiness", and prescribed medication for nausea and diarrhea. She admitted that a person who is addicted to opium derivatives frequently has nausea and diarrhea and that she was "fairly sure" he was addicted to paregoric. She stated that a person under the influence of any drug would not be able to function at his full potential in society and answered in the negative the question "[J]ust because a person is addicted doesn't mean he's mentally incompetent in your opinion, does it?"

A clerk in the Medical Record Library of the St. Louis State Hospital produced the medical records pertaining to movant's treatment in spring of 1969. The records indicated that he gave a history of alcohol addiction together with paregoric addiction. The prognosis indicated "Personality disorder: 316.3 dyssocial behavior, 300.4

neurosis depressive, 303.2 Alcoholism, alcohol addiction. Drug dependence, 304.0 (paregoric)." The mental status examination, made February 17, 1969, found "Anxiety was markedly present. . . . Suicidal thoughts were markedly present." "Clouding of consciousness and inability to concentrate and short attention span due to acute effects of alcoholism were also moderately present." The diagnostic staffing note indicated "personality disorder, drug dependence." His psychiatric evaluation indicated his chief complaint was to "kick the habit" and that he has "had treatment for organic complaints but not for previous psychiatric disorders."

The official court reporter at the trial in June, 1968 testified. She read parts of the transcript of a proceeding on February 6, 1969 concerning three pending charges after movant was sentenced on the conviction which is the subject of this motion. At that time the movant's attorney, who also represented him in the June, 1968 trial, informed the Judge that the "defendant is

incapable of cooperating with counsel in his defense due to the fact that he is suffering under the effects of narcotic drugs. . . . He is subject to being confined in the State Hospital on Arsenal Street . . . ." On February 7, on the basis of communications from two physicians that the movant was presently addicted and needed hospitalization, the court did not compel the defendant to go to trial on the pending charges and stated that "[t]he Court, having had an opportunity to observe the defendant, is of the opinion that —this is a lay observation—that he appears not to be normal." A continuance was granted and the cause returned to the assignment division.

On October 5, 1972, the trial court, on this motion, made extensive findings of fact and conclusions of law [1] and overruled the motion.

Appellant raises six points on this appeal. In essence, he contends (1) that certain of the findings of fact [2] are clearly er-

---

1. The conclusions of law are as follows:
   "1. That falling asleep in court is not evidence of mental incompetence.
   2. That addiction to paregoric, even if existed, is not equivalent to mental incompetence.
   3. That nothing occurred at the trial or in the pretrial proceedings which would raise a bona fide doubt as to Movant's competency or ability to assist in his defense or to require a determination of Movant's competence.
   4. That Movant was competent to stand trial and to assist in his own defense; that he understood the nature of the proceedings; and that he was competent to have the requisite criminal intent.
   5. That Movant's counsel was an extremely able and competent attorney and represented Movant well during the pre-trial, trial and post-trial proceedings.
   6. That no product of an illegal search and seizure was admitted in evidence against Movant and this matter was disposed of in Movant's appeal. State v. McCarthy, 452 S.W.2d 211 [Mo.].
   The Court concludes that after a very thorough examination of the previous record of this trial and after a lengthy and exhausting hearing on the motion herein pending, the petitioner's motion under Rule 27.26

is overruled as heretofore specifically enumerated.
   (signed) Harry J. Stussie
   
   (typed) Judge, Division 2
   Twenty-First Judicial Circuit
Dated this 5th day of October, 1972.
   (FILED—October 5, 1972)"

2. Appellant complains that findings of fact 7 through 13 misconstrue the movant's burden to establish a bona fide doubt as to his competency to stand trial. Findings 7 through 13 are as follows:
   "7. That Movant presented no testimony by his attorney indicating Movant was incompetent during trial or incapable of assisting in his defense.
   8. That Movant presented no other professional medical testimony as to his competence at the time of trial.
   9. That Movant's evidence shows no more than his use of and possible addiction to paregoric and does not show mental incompetence or inability to assist in his defense.
   10. That at this present 27.26 petition hearing, Movant demonstrated that he recalled many events during his trial and an understanding of them and an awareness of the nature of the proceedings.

roneous and misconstrue the appellant's burden of proof to establish a "bona fide" doubt as to his competency to stand trial and assist in his own defense so that an examination and hearing were required under § 552.020, RSMo., 1969, (2) that the court's conclusions of law that there was no evidence of mental incompetency by reason of falling asleep or addiction to paregoric misconstrued the burden on movant to show only that a reasonable doubt existed to competency to stand trial; that the court's conclusions of law, that nothing occurred prior to or during trial which would raise a bona fide doubt as to competency and that movant was competent to stand trial, were clearly erroneous, and (3) that the court's conclusion that movant's counsel was competent was clearly erroneous since counsel had knowledge of his addiction prior to, during and after trial and because he failed to inform the court of the addiction and to request a hearing to determine the competency to stand trial and assist in his defense.

The appellant argues that "it is clear" from the court's findings of fact that the court was requiring appellant to prove by a preponderance of evidence that he was *in fact* mentally incompetent and unable to assist in his own defense whereas the proper standard is that if there is any substantial evidence which raises a bona fide doubt as to the defendant's competence to stand trial, the judge must *sua sponte* order an evidentiary hearing on the issue.

The State-respondent urges that the court's conclusion that there were no circumstances which would create a bona fide doubt of movant's competence and that counsel was competent were not clearly erroneous.

■■ A motion filed under Rule 27.26 is an independent civil proceeding, which is governed, insofar as applicable, by the Rules of Civil Procedure. Rule 27.26(a). In this proceeding and in our consideration of the contentions on appeal the burden of proving the grounds for relief rests upon the movant and our review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). Jones v. State, 471 S.W.2d 223, 226 (Mo. 1971). The findings of fact and conclusions of law are presumed to be correct unless clearly erroneous, which means they are so only if upon review of the entire record the court is left with the definite and firm impression that a mistake has been made. Anderson v. State, 487 S.W.2d 455, 460 (Mo.1972); Crosswhite v. State, 426 S.W.2d 67, 70 (Mo.1968). The appellate court is required to give due regard to the opportunity of the trial court to hear and observe the witnesses and to defer to its determination of credibility unless there is an abuse of discretion. Brown v. State, 495 S.W.2d 690, 694 (Mo.App.1973); see Anderson, Post-Conviction Relief in Missouri—Five Years Under Amended Rule 27.26, 38 Mo.L.Rev. 1 (1973).

■■■ It is now and has been clear that a conviction of an accused person while he is legally incompetent violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed.2d 815 (1966). It is also clear that under our basic common law, civilized values and judicial policy, an accused who lacks mental capacity to understand the proceedings against him or to act rationally in his own defense may not be submitted to a criminal prosecution. Miller v. State, 498 S.W.2d 79, 83 (Mo.App.1973). Our statute § 552.020(1) provides that "No person who as a result of mental disease or defect lacks capacity to understand the proceed-

11. That Movant admitted being competent in the jobs he held at and near the time of trial.

12. That Movant was mentally competent and able to assist in his own defense at the time of trial.

13. That Movant presented no evidence which would cause the Judge, Defense Counsel, or Prosecuting Attorney to believe that Movant might be incompetent or unable to assist in his defense at the time of trial."

ings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Subsection 2 provides that "Whenever any judge . . . has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed he shall . . . appoint one or more . . . physicians to make a psychiatric examination of the accused. . . ." Subsection 6 continues, "If neither the state nor the accused nor his counsel contests the opinion [of the physicians as to the accused's capacity to stand trial], the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested the court shall hold a hearing on the issue. . . ."

■ The United States Supreme Court in Pate v. Robinson, *supra,* elevated these basic principles to constitutional dimensions and held that "where the evidence raises a 'bona fide doubt' as to the defendant's competence to stand trial, the judge on his own motion must", 383 U.S. at 385, 86 S.Ct. at 842, conduct a hearing on the question whether requested or not. See Miller v. State, *supra,* at 83 of 498 S.W.2d and Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo.1969). In Moore v. United States, 464 F.2d 663 (9th Cir. 1972), it is held that a due process evidentiary hearing is constitutionally compelled at any time that there is substantial evidence[3] that the defendant may be mentally incompetent to stand trial. The function of the trial court in applying *Pate* is not to determine the ultimate issue whether defendant is compe-

tent to stand trial, but its sole function is *to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency.* At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue. Moore, supra, at 666.

■ On the issue whether an accused is competent to stand trial or to plead, the test must be whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Pulliam v. State, 480 S.W.2d 896 (Mo.1972).

■■ Under the principles of *Pate* and our statutes, the trial court is not required to order a competency examination and conduct a hearing *sua sponte* in the absence of circumstances and evidence of incompetency. The suspicion or actual presence in some degree of mental illness or need for treatment is not to be equated with incompetency to stand trial or mental disease or defect excluding fitness to proceed, and does not require even under Pate v. Robinson, *supra,* a hearing. That a trial judge may have felt that the defendant needed treatment or had a mental problem is not an expression of reasonable doubt of the defendant's competency. It does not follow from *Pate* that the mere presence of some mental problem precipitates reasonable doubt requiring *sua sponte* action by the trial court. Newbold v. State, 492 S.W.2d 809, 819 (Mo.1973). The scope of

3. " 'Substantial evidence' is a term of art. 'Evidence' encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying *Pate's* substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? [Its] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency." 464 F.2d at 666.

bona fide or reasonable doubt is restricted to that unfitness which is the result of mental disease or defect. § 552.010 provides that the terms " 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis or an abnormality manifested only by criminal sexual psychopathy. . . . "

Under the principles of *Pate, Brizendine, Moore, supra,* and our statutes, the trial court did not err in failing *sua sponte* to order a psychiatric examination under the facts here, and the trial court on this motion was not clearly erroneous in making its findings and conclusions.

The evidence showed that he was addicted to paregoric, that he fell asleep for about twenty to twenty-five minutes during a several-days trial, that there is no evidence in the record, including the hospital reports, that he had been treated for a psychiatric problem before he came to the state hospital in February, 1969, and several diagnoses contained in appellant's record, though indicating such problems as neurosis and dyssocial tendencies, do not mention evidence of any psychosis.

In numerous decisions in Missouri, the evidence did not raise a reasonable or bona fide doubt concerning competency in order to require a hearing and examination. The fact that defendant was an alcoholic[4] or that an accused was mentally retarded[5] or attempted suicide[6] did not create such a bona fide doubt as to competency that an examination and hearing was required.

This case is clearly distinguishable from *Pate* and *Brizendine* relied on by appellant. In *Pate,* there was evidence some of which indicated that (1) Robinson was hit by a brick while a child and thereafter acted peculiar, (2) he had episodes of sudden, unexplained violence towards objects and people, (3) he shot and killed his 18 month old son, (4) he was taken to a hospital and was found to be hallucinating and thought someone was after him. Pate's attorney throughout trial insisted on his client's incompetency to stand trial. Under these circumstances the court laid down the principle requiring a *sua sponte* hearing.

We do not believe that the trial court in this *27.26* proceeding misconstrued or adopted an erroneous standard to determine whether or not an examination should have been granted. Conclusion of Law No. 3 clearly stated that nothing occurred at trial or in the pretrial proceedings which would raise a "bona fide doubt as to Movant's competency." This is the proper standard under *Pate* and *Moore,* both *supra.* And we cannot say that "falling asleep" in court for twenty to twenty-five minutes requiring a tap to awaken him or being addicted to paregoric raises a bona fide doubt as to the movant's mental competency under *Pate* and our statutes which would compel the judge to order a competency examination and subsequent hearing. Such factors do not rise to the level of substantial evidence creating a bona fide or reasonable doubt as to the appellant's competency to stand trial and assist in his own defense.

As to appellant's point concerning incompetency of counsel, there is no longer room for argument that an accused is entitled to effective assistance of counsel. Numerous standards have been stated to determine when counsel is deemed to be ineffective. On this issue, it has been held that the movant has a heavy burden to carry and it is recognized that counsel is vested with broad latitude in a defense of a criminal case and he is not to be adjudged ineffective by reason, in retrospect, of what appear to be errors of judgment. The ultimate test is whether the efforts and representation of the attorney have reached a level of adequacy so that the defendant may be said to have a fair trial.

4. State v. Harris, 477 S.W.2d 42 (Mo.1972).

5. Pulliam v. State, 480 S.W.2d 896 (Mo. 1972).

6. Drope v. State, 498 S.W.2d 838 (Mo.App. 1973).

Errors in strategy or judgment are not proof of ineffectiveness of counsel. Thebeau v. State, 491 S.W.2d 275 (Mo.1973).

■ Appellant contends that the trial court's conclusion that movant was represented by a competent attorney during pre-trial, trial and post-trial proceedings was clearly erroneous in light of the overwhelming evidence that the attorney knew of his drug addiction prior to, during and after the trial, and his failure to request a 552.020 hearing. He attempts to argue that the attorney must have been unaware of movant's right to an examination under § 552.020.

Movant's attorney did not testify at the 27.26 hearing. Even though there is evidence that movant's counsel was aware of his addiction and advised appellant to take treatment, the fact that he did not move for a competency examination and hearing under § 552.020 does not evidence ineffectiveness of counsel. Nothing in the record indicates that movant's attorney had any basis for concluding that movant suffered a mental disease or defect within the meaning of the statute. Knowledge of drug addiction, paregoric addiction or alcoholism alone, which is excluded in the statute is not a sufficient ground to request an examination or hearing to stand trial and such knowledge did not compel him to request such an examination or hearing. Under these circumstances, the failure to request an examination or hearing did not rise to the level of ineffectiveness of counsel. Movant argues that his counsel must have been unaware of § 552.020. This assertion is unsupported by any testimony, unlike Brizendine, *supra*.

We cannot say, therefore, that under the circumstances here, movant was deprived of effective assistance of counsel.

■ The fact that movant was subsequently committed by the probate court to the Department of Mental Disease on additional pending subsequent charges under § 475.010, is not determinative of his compe-

tency to stand trial in June, 1968 under § 552.020.

We have reviewed the entire record, read the briefs and all cases cited by the appellant, and conclude that the trial court's findings of fact and conclusions of law and its order overruling the motion to vacate filed by the appellant are not clearly erroneous.

The judgment and order of the trial court denying appellant's motion to vacate is, therefore, affirmed.

DOWD, C. J., and WEIER, J., concur.