**Joseph A. BOYER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 35417.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 2, 1975.

Joseph S. Sanchez, Hillsboro, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Chief Counsel, Crim. Div., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Joseph Boyer appeals from denial of his Rule 27.26 motion to vacate the life sentence entered on a conviction of first degree

murder under § 559.010 RSMo.[1] Appellant contends: (1) he was entitled to and did not receive a hearing on the issue of his competency to stand trial; (2) that he did not receive effective assistance of counsel at trial or (3) on appeal; and (4) the trial court erroneously admitted oral and written confessions made by Boyer after his arrest which were involuntary and tainted by a prior unlawful statement made before the Miranda warnings were given. Our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous" Rule 27.26(j). We affirm.

Appellant was apprehended and charged with theft of an automobile on the day of the crime. Following arrest and before his Miranda rights were explained, appellant admitted killing a gas station attendant in Pevely, Missouri, to one of the arresting officers. This confession was neither offered nor received in evidence. Warned thereafter of his "Miranda"[2] rights, appellant made three confessions of the murder, twice to police officers and once to an assistant prosecutor.

On the day following Boyer's arrest, defense counsel notified the court of his intention to rely upon the defense of insanity under § 552.030 V.A.M.S. and obtained a psychiatric evaluation of appellant at the Fulton State Hospital where he was kept under observation for 3½ months. The written report of that examination, dated February 6, 1970, concluded unequivocally that appellant was sane at the time of the crime under § 552.030 and competent for trial within the meaning of § 552.020. Roland Wegmann, appointed co-counsel in March, 1970, obtained a second psychiatric examination under order of the court by a private firm, N. K. Associates. This report, secured at the expense of co-counsel, indicated Boyer was sane at the time of the killing, and in pertinent part is as follows:

"[E]ven granting that this man needed help prior to the alleged incident, and granted that he has present problems, *there is no indication that he was disoriented at the time, place, situation, identity or sequence at the time of the incident.*" (emphasis supplied).

The report summarized:

"It can be said that Mr. Boyer was found to be *sane* and *knowledgeable* of what he experienced." (emphasis supplied).

"It is not beyond the realm of possibility . . . that he could have had a psychotic episode at some time or other in his life, but there is no indication that one occurred at this particular time."

With respect to appellant's present competence, the N. K. report stated:

"[A]fter being in jail for a period, he is above average in his ability to absorb facts from the environment and in applying these facts in normal situations. He is probably at least average on school-oriented tasks such as Vocabulary and Arithmetic."

The report from the State Hospital at Fulton, following Boyer's 3½ month stay, pointed out that appellant's memory was good and he had "no mental disorder" at the time of examination. This report contained the following findings and recommendation:

"That the accused has no mental disease or defect within the meaning of Section 552.010.

"That the accused has the capacity to understand the proceedings against him and can assist in his own defense.

"That the accused did know and appreciate the nature, quality and wrongfulness of his conduct.

"There is no supportive evidence to indicate that this patient was suffering from a mental disease or defect at the time of the crime and he should be returned to

---

1. All statutory references are to V.A.M.S. 1969 and rule references are to V.A.M.R. unless otherwise indicated.

2. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court for disposition of the charges pending against him."

Considering these reports, counsel conferred with defendant, during the week preceding trial; and on the day of trial Boyer personally withdrew his plea of insanity, pleaded not guilty and advised the court this action was based on his independent judgment, not the result of coercion. The ensuing trial ended with the jury's verdict of murder in the first degree and sentence by the court to life imprisonment. Attorney Benson Cytron, appointed to represent defendant on appeal, considered 23 assignments of error in the motion for new trial and determined that all were insubstantial except one, which he briefed and argued. The judgment was affirmed by the Missouri Supreme Court, *State v. Boyer,* 476 S.W.2d 613 (Mo.1972).

█ Appellant first contends the trial court erred in failing to conduct a hearing as to appellant's competence to stand trial in view of his two mental examinations. The requirement of a competency hearing may arise in two ways, V.A.M.S. § 552.-020(6): (1) the trial court *may* hold a hearing on the issue of competency to stand trial on its own motion, or (2) the court *shall* hold a hearing when the psychiatric report is contested. Defendant failed to "contest" the "report" or otherwise raise the issue following receipt of the written mental evaluations, effectively waiving the mandatory hearing requirement, leaving for our consideration only the question of whether the court *sua sponte* should have ordered a hearing.

█ Both motions for psychiatric examination were couched in terms of insanity at the time of the act (§ 552.030) rather than competency to stand trial (§ 552.020). These issues are distinct not only as to the proof required but also as to procedure; insanity is for the jury while competency is for the court, *Franklin v. State,* 455 S.W.2d 479, 484[5] (Mo.1970). The first motion cited § 552.020(4) and the report from Fulton

was directed principally to that issue. The second, leading to the N. K. Associates' examinations, was also couched in terms of § 552.020. Trial counsel testified they did not intend to raise the competency issue by that motion. The effect of these pre-trial motions was to raise or explore the issue of insanity as a possible defense and "the court is not required to conduct a competency hearing *sua sponte* in the absence of circumstances which render suspect the psychiatric opinion which has certified an accused fit to proceed." *Miller v. State,* 498 S.W.2d 79, 85[8] (Mo.App.1973). Mere granting of the motions for psychiatric examinations did not automatically establish a bona fide doubt as to appellant's competence to stand trial, *Jones v. State,* 505 S.W.2d 96, 98[1] (Mo.App.1974), nor require a *sua sponte* hearing under the mandate of *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (Mo.1966). See also *Newbold v. State,* 492 S.W.2d 809, 820[5] (Mo. 1973), and *McCormick v. State,* 463 S.W.2d 789, 790 (Mo.1971). Further, the court in *Jones, supra* at 98, states: "the test of competency is whether the accused has sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him." Although the N. K. report raised questions as to Boyer's emotional state, it did not suggest that he was incompetent to proceed and the existence of mere "mental problems" does not in itself raise a bona fide doubt as to competence requiring a *sua sponte* hearing since the accused was not hindered in understanding the proceedings and in assisting counsel. *McCarthy v. State,* 502 S.W.2d 397, 403[8] (Mo.App.1973); *Newbold v. State, supra* at 819[5] (Mo.1973); *Miller v. State,* 498 S.W.2d 79, 85[9] (Mo.App.1973); § 552.010. In *U. S. v. Maret,* 433 F.2d 1064 (8th Cir. 1970), the U. S. Court of Appeals for the Eighth Circuit commenting on a psychiatric evaluation containing reference to emotional problems and describing defendant as a "sociopathic personality," stated:

"Some degree of mental illness does not equate with legal incompetence . . . when the report does not indicate a state of present insanity or mental incompetence, the trial court is not required to take any other action prior to trial."

*Id.* 1067[1].

Both psychiatric reports conclude in effect that Boyer was fit to proceed. On advice of counsel and with the benefit of the psychiatric evaluations Boyer decided to voluntarily withdraw his plea of not guilty by reason of insanity. The attorneys for the defense testified at the 27.26 hearing that they never seriously doubted Boyer's competence to proceed. The record does not show appellant incompetent; on the contrary it appears he rationally consulted with counsel and was aware of the nature of the proceedings against him. Finally, the trial court observed Boyer first-hand at the time he withdrew his plea of not guilty by reason of insanity and was able to obtain direct evidence of appellant's capacity. *State v. Lowe*, 442 S.W.2d 525, 530[4] (Mo. 1969); *State v. Sears*, 501 S.W.2d 491, 493[3] (Mo.App.1973); *Newbold, supra* at 818. The trial court did not err in failing to hold a competency hearing *sua sponte* nor was a finding of fitness to proceed required. Appellant's first contention is denied.

■ Appellant's second and third points fail to meet the requirements of Rule 84.-04(d), V.A.M.R., as neither states what actions of the court are sought to be reviewed nor why they are claimed erroneous. We have no duty "to seine the argument portion of an appellant's brief or the transcript on appeal to ascertain the whereins and whys of claimed errors presented in the points relied on as mere conclusions." *Griffith v. State*, 504 S.W.2d 324, 327[3] (Mo. App.1974). They preserve nothing for appellate review. *State v. Davis*, 516 S.W.2d 784, 785[2] (Mo.App.1974); *State v. Robbins*, 455 S.W.2d 24, 25–26[1] (Mo.App.1970).

However, we will examine the points for plain error.

■ Appellant contends he was denied effective assistance of counsel at trial because they were unaware and failed to assert what appellant urges as a viable defense under § 552.010, V.A.M.S.: "drug abuse with psychosis." [3] The Missouri standard for establishing ineffective assistance of counsel is whether "there has been such failure on the part of the attorney that defendant has not had a fair trial." *McQueen v. State*, 475 S.W.2d 111, 116 (Mo. banc 1971), (concurring opinion by Finch, C. J.); see *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974); *Sims v. State*, 496 S.W.2d 815, 817[2] (Mo.1973); *Thebeau v. State*, 491 S.W.2d 275, 277[1] (Mo.1973); *State v. Brownridge*, 506 S.W.2d 466, 468[7] (Mo. App.1974). For the omission to constitute ineffective assistance of counsel appellant must show the suggested defense was one which trial counsel could have legitimately asserted on his behalf. He has not so shown. Drug abuse, absent psychosis, is not a defense under § 552.010; therefore, psychosis is the determinative factor. It is clear his trial attorneys considered the possibility of mental disease or defect, including psychosis, and after diligent effort concluded none was present. The best available evidence, the psychiatric evaluations, support the conclusion that Boyer was not psychotic when he committed the crime. The point is without merit.

■ Appellant's third contention, though improperly drawn, charges ineffective assistance of counsel on appeal, apparently because appellate counsel briefed only one of the 23 points raised in the motion for new trial. At the 27.26 hearing, attorney Cytron testified that he reviewed and outlined the trial transcript, considered each issue raised in the motion for new trial, and while researching some, summarily dismissed others. In his judgment, all were

---

**3.** At the time of the murder, appellant had taken Demerol under prescription of his family physician to reduce the pain of a kidney or urinary problem. This fact was raised at trial to attack the prosecution's assertion of a criminal intent and to challenge the voluntary nature of the confessions made.

insubstantial except the one he finally briefed. Appellant has made no effort to show that Cytron acted with prejudice or improper motives, nor that discarding the points on appeal was patently wrong. Where this had not been shown, counsel is entitled to rely upon his own judgment and under no duty to brief all assignments of error. *Cardarella v. U. S.*, 375 F.2d 222, 230[16] (8th Cir. 1967), *cert. denied*, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176. Though his efforts failed to achieve a reversal "counsel is not to be adjudged ineffective because of some error or mistake in trial strategy or judgment nor because some action of counsel proved unsuccessful." *Tucker v. State*, 481 S.W.2d 10, 15[7] (Mo. 1972). This point and number two above, are ruled against appellant and neither suggests "manifest injustice" in the presentation of the case at trial or on appeal.

Finally, appellant alleges that the trial court erred in admitting certain confessions made while in custody. Boyer made four statements—three oral and one written. The first at approximately 2:15 a.m. on September 17, 1969, was made at the site of arrest to Officer Clarence Haverstick of the Festus Police Department who was guarding appellant. This statement was suppressed and ruled inadmissible.

At about 3 a.m. in Crystal City Police Station Boyer was given the Miranda warnings by Officer Paul Roth and affirming that he understood his rights, confessed freely despite Roth's attempt to prevent him from so doing. Roth's reluctance to take a statement stemmed from his inexperience in handling felonies and his fear of making an error during the investigation. At approximately 4 a.m. Boyer was transferred to Hillsboro by Officer Theodore Wheelis of the Jefferson County Sheriff's Department who en route again gave Boyer his Miranda warnings to which Boyer responded that he knew all about his rights. Wheelis asked Boyer why he committed the crime and Boyer again related the entire story. Wheelis testified appellant was very talkative during the trip from Crystal City to Hillsboro where, on arrival, appellant again confessed, this time to Assistant Prosecuting Attorney Furtaw. This confession, reduced to writing and signed by appellant at about 5:15 a.m., was in narrative form rather than an exchange of questions and answers. All confessions except the first were admitted in evidence.

█ The circumstances surrounding Boyer's first statement must be examined in detail. At about 2:15 a.m. Officer Nahlik of the Crystal City Police Force spotted a car on a parking lot which earlier had been reported stolen. Finding appellant in the front seat, Nahlik opened the door, told appellant he was under arrest for suspected car theft, radioed for assistance, and Officer Haverstick of the Festus Police Force drove promptly to the scene. When Haverstick arrived, Nahlik told him to guard the handcuffed prisoner and went to a fence at the edge of the parking lot to speak with other persons as possible witnesses. Without any prior conversation between them, Boyer, when alone with Haverstick, spoke to him for the first time and asked "is this [sic] the only thing they want me for is the stolen car?" to which Haverstick replied, "well what else did you do?" Appellant responded, "I shot a man at the Pevely Standard." No further conversation occurred between them, no mention was made of Miranda warnings and on Officer Nahlik's return to the car, he drove Boyer to the Crystal City Police Station. During the trip to the station, Nahlik who had not heard the conversation between Haverstick and Boyer, did not speak to Boyer of the crime but merely "passed the time with him." Nothing in the record suggests either officer was aware of the murder or of Boyer's involvement when the statement was made to Haverstick or when Nahlik arrested Boyer for car theft. There was no possibility that any "focus" had centered on appellant as a suspect for murder. We are unwilling, in the absence of cogent contrary reasons, to say that when the accused is the focus of one crime (here car theft), admissions as to another completely separate

crime (murder) the commission of which is not shown in the knowledge of the investigating officer, will be inadmissible as falling within a blanket exclusionary rule of Miranda.[4] We also note that Boyer's statement to Haverstick seemed entirely spontaneous. In the conversation with Haverstick, he asked a question of the officer which elicited a general question in response and Boyer then blurted out his admission. Thus unlike Miranda, the statement did not stem from protracted questioning initiated by law enforcement officers but was a spontaneous admission of an unrelated crime, not suspected or under investigation, to an officer who was waiting while another made an on the street investigation of other witnesses immediately following an arrest for car theft.

■■■■ Appellant argues the confession to Haverstick "let the cat out of the bag" thereby tainting the subsequent statements; and since the first was inadmissible, all others should be excluded. Having ruled Boyer's confession to Haverstick admissible, we find no taint resulted to the subsequent statements made following adequate Miranda warnings. Appellant's "cat out of the bag" argument is inapplicable. However, assuming in arguendo that the statement made to Haverstick was inadmissible and excluded as done by the trial judge, the Missouri Supreme Court in *State v. Wright*, 515 S.W.2d 421 (Mo. banc 1974), held the mere fact that statements are made after one in which appropriate safeguards are not observed does not, per se, make the subsequent statements invalid. See also *U. S. v. Knight*, 395 F.2d 971 (7th Cir. 1968); *U. S. v. Hale*, 397 F.2d 427 (7th Cir. 1968). Each case must be decided individually based on the circumstances of the case to determine the existence and extent of the casual relationship between the multiple confessions. The Supreme Court in *U.*

*S. v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947) which suggested the "cat out of the bag" theory noted the psychological and practical effects of having confessed and recognized that, in a sense, a subsequent confession is always the fruit of the first. However, the court also declared that it "has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." *Id.* at 331 U.S. 541, 67 S.Ct. 1398.

■■■■ In the present case the statements made by appellant were not the result of protracted interrogation, physical or psychological force. The second confession, made to officer at Crystal City following the Miranda warnings, was volunteered by Boyer. Further, though not widely separated in time, the statements were made to four different individuals at four different places in four distinct settings and were so independent of one another we can not call one the fruit of the other. There is no indication from the record that the last three statements were induced by appellant's knowledge that he admitted the shooting to Officer Haverstick at the time of his arrest. We find that even if the original confession were inadmissible (as the trial court ruled) it did not induce those that followed and for this reason also appellant's rights were not abridged by use of the subsequent statements, *State v. Wright, supra* at 427.

■■■■ Appellant further contends the confessions were not voluntary because they were made while under the influence of drugs and the trial court erred in not determining at the hearing to suppress, that appellant was not under the influence of drugs. The trial court found that the last three confessions were "voluntarily

---

4. For similar rulings under the Rule in *Escobedo v. State of Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; see *Miller v. U. S.*, 354 F.2d 801 (8th Cir. 1966), and *Wakaksan v. U. S.*, 367 F.2d 639 (8th Cir. 1966). Under the Rule in *Miranda v. State of Arizo-*na, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. See *State v. Goodpaster*, 479 S.W.2d 449 (Mo.App.1972); *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973); *Montgomery v. U. S.*, 268 A.2d 271 (D.C.Ct. App.1970).

knowingly and intelligently" made and were not produced by coercion, threats or promises of leniency.[5] Expert testimony elicited by appellant showed that an overdose of Demerol, the drug allegedly taken by appellant, would have left him dizzy, mentally confused, nauseated, uncoordinated, passive, incoherent, withdrawn and unreasonable. The evidence shows quite the contrary; appellant was talkative, coherent and appeared to be acting normally. Boyer told Officer Roth that he was not taking drugs. The evidence is insufficient to support the claim that any of appellant's confessions were prompted by the influence of drugs. From the record in this case the trial court was justified in finding the confessions voluntary and we cannot say this decision to be clearly erroneous. *State v. Mountjoy*, 420 S.W.2d 316, 323[8] (Mo.1967). Appellant's fourth contention is denied.

Judgment affirmed.

DOWD, C. J., and CLEMENS, J., concur.

---

5. The first confession had been ruled inadmissible; accordingly no findings concerning its voluntary character was made or required.